DOREEN B. CATANIA, f/k/a Doreen Laudani, Plaintiff-Appellee, v. LOCAL 4250/5050, of the Communications Workers of America, *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—04—1685

Opinion filed August 17, 2005.

Burke, Burns & Pinelli, Ltd., of Chicago (Vincent D. Pinelli and Ellen B. Epstein, of counsel), for appellants.

Kulwin & Associates, L.L.C., of Chicago (Shelly B. Kulwin and Jeffrey R. Kulwin, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

Following the termination of her employment, the plaintiff, Doreen Catania, filed a complaint against her employer, Local 4250/5050 of the Communications Workers of America (Local 4250), and Steven Tisza, the president of Local 4250 (referred to collectively as "the defendants"), asserting claims for retaliatory discharge, tortious interference with a contract, and violations of the Illinois Wage Payment and Collection Act (Wage Payment Act) (820 ILCS 115/1 *et seq.* (West 1998)). After a jury trial, the trial court entered a judgment on the jury's verdict in favor of the defendants on the retaliatory discharge and tortious interference counts, and against the defendants in the amount of $81,000 on each of the two counts predicated on the Wage Payment Act. Subsequently, the plaintiff was awarded attorney fees in the sum of $96,500 and costs in the amount of $942.80. The defendants now appeal from the trial court's orders: denying their posttrial motion seeking a judgment notwithstanding the verdict or, in the alternative, a new trial or a remittitur; awarding the plaintiff attorney fees and costs; and denying them leave to file a bill of costs with respect to the counts on which they prevailed. For the reasons that follow, we affirm in part, reverse in part, vacate in part, and remand the matter for a new trial.

Due to our ultimate disposition of this case, we need not set forth the facts in great detail. Generally, the plaintiff was hired in 1992 as the office manager for Local 4250, a division of the Communication Workers of America union which represented AT&T employees. According to the plaintiff, she was given the same benefits that union members received under a collective bargaining agreement between Local 4250 and AT&T. During the course of her employment, the plaintiff became privy to certain financial information contained in Local 4250's petty cash account and, in 1996, she accused Tisza of misappropriating funds from that account. The following year, the plaintiff's employment was terminated. She claimed that she was fired because of the accusations that she made against Tisza; whereas, Tisza maintained that her employment was terminated for other work-related reasons. Thereafter, the plaintiff sought certain employment benefits from Local 4250 which she asserted were due to her pursuant to the collective bargaining agreement. Upon the denial of her request for benefits, the plaintiff filed the instant action.

In count I of her complaint, the plaintiff asserted a claim for retaliatory discharge against Local 4250. Count II charged that Local

4250 violated the Wage Payment Act by failing to pay the plaintiff "final compensation" in the amount of $12,652.08. Count III alleged that Tisza, as an agent of Local 4250, was individually liable to the plaintiff for the final compensation that was owed to her because he knowingly permitted Local 4250 to violate the provisions of the Wage Payment Act. Finally, in count IV, the plaintiff charged Tisza with tortious interference with her employment contract.

Following trial, the jury returned a verdict in favor of the defendants on counts I and IV, and against the defendants in the amount of $81,000 on each count (counts II and III) predicated on the Wage Payment Act. The trial court entered judgment on the jury's verdict.

The defendants then filed a posttrial motion seeking a judgment notwithstanding the verdict or, alternatively, a new trial or a remittitur. With respect to the judgment notwithstanding the verdict, they argued that: there was no credible evidence to support a verdict against them on counts II and III; the jury, by returning verdicts in the amount of $81,000 on each of these counts, essentially allowed the plaintiff to recover "twice for the same wrong"; and the plaintiff failed to prove that Tisza "wilfully" violated the Wage Payment Act. As for their motion for a new trial, the defendants asserted that a new trial was warranted because, *inter alia*, counts II and III were improperly tried before a jury. The defendants also maintained that the damage award was excessive and that a remittitur should have been entered reducing the award from $81,000 to $0 or from $81,000 to $18,807.04, the amount claimed by the plaintiff at trial. Following arguments, the trial court denied the defendants' posttrial motion.

After the denial of the defendants' posttrial motion, the plaintiff filed a petition for attorney fees. The trial court awarded her $96,000 for attorney fees and costs in the amount of $942.80. The court also denied the defendants' request for costs for the counts on which they prevailed. This timely appeal followed.

On appeal, the defendants contend that the trial court erred in denying their motion for a judgment notwithstanding the verdict or, in the alternative, a new trial or a remittitur. They also argue that the trial court erred in awarding the plaintiff attorney fees and costs, and denying them leave to file a bill of costs. For reasons that will become clearer later in this opinion, we first address the defendants' argument raised in their motion for a new trial; namely, that the matter should be remanded for a bench trial because there is no right to a jury trial under the Wage Payment Act.

■ The Illinois Constitution provides that "[t]he right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const. 1970,

art. I, § 13. This provision guarantees the right to a jury trial in actions that carried such a right under the common law when the Illinois Constitution was adopted. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 72-73, 643 N.E.2d 734 (1994). In all other actions, there is no right to a jury trial unless the legislature specifically so provides by statute. *In re Estate of Mulvaney*, 128 Ill. App. 3d 133, 135-36, 470 N.E.2d 11 (1984). A litigant's right to a jury trial is a legal determination which we review *de novo. Bank One, N.A. v. Borse*, 351 Ill. App. 3d 482, 487-88, 812 N.E.2d 1021 (2004).

■ The Wage Payment Act provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5 (West 1998). "Final compensation" is defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2 (West 1998).

■ With respect to who is considered to be an "employer" under the Wage Payment Act, section 2 defines the term as:

> "any individual, partnership, association, corporation, business trust, employment and labor placement agencies where wage payments are made directly or indirectly by the agency or business for work undertaken by employees under hire to a third party pursuant to a contract between the business or agency with the third party, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." 820 ILCS 115/2 (West 1998).

In addition, "[a]ny officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13 (West 1998).

■ The language of the Wage Payment Act does not provide for the right to a jury trial. Therefore, our inquiry focuses on the question of whether an action brought under the Wage Payment Act constitutes a " 'special or statutory [proceeding] unknown to the common law.' " *Richard/Allen/Winter, Ltd. v. Waldorf*, 156 Ill. App. 3d 717, 720, 509 N.E.2d 1078 (1987), quoting *City of Monmouth v. Pollution Control Board*, 57 Ill. 2d 482, 485, 313 N.E.2d 161 (1974). We begin our analysis with a discussion of two cases, *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 643 N.E.2d 734 (1994), and *Seaman v. Thompson Electronics Co.*, 325 Ill. App. 3d 560, 758 N.E.2d 454 (2001), both of which are particularly instructive to the question at hand.

In *Martin*, the supreme court was asked to consider the question of whether the Illinois Constitution guaranteed a right to a jury trial for causes of action brought under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*), as the language of the statute was silent on the issue. In determining whether an action under the Consumer Fraud Act was a new statutory right created by the legislature, the *Martin* court compared the elements needed to establish a claim for common law fraud with the elements needed to recover under the Consumer Fraud Act. In so doing, the court noted that the Consumer Fraud Act does not require a party to prove actual reliance, an untrue statement regarding a material fact, or a knowledge or belief by the party making the statement that it was untrue; all of which are required to be pled and proven in a common law fraud action. *Martin*, 163 Ill. 2d at 76. The supreme court concluded that the Consumer Fraud Act is a statutory proceeding unknown to the common law and, accordingly, there is no right to a jury trial in the absence of a statutory provision conferring that right. *Martin*, 163 Ill. 2d at 76.

Subsequently, in *Seaman*, the court applied the same analysis in determining whether a right to a jury trial exists under the Prevailing Wage Act (820 ILCS 130/0.01 *et seq.* (West 2000)). In answering the question in the negative, the court stated that "[a]lthough the English common law included an action to recover wages based on breach of contract, such an action differs from the type of action created by the [Prevailing Wage] Act" because none of the elements required to be proven under the Prevailing Wage Act were germane to a common law action for wages. *Seaman*, 325 Ill. App. 3d at 562. The court held that suits for prevailing wages did not exist at common law and, therefore, the Illinois Constitution did not confer the right to a jury trial for actions filed pursuant to the Prevailing Wage Act. *Seaman*, 325 Ill. App. 3d at 563-64.

The plaintiff argues that her claims were, in fact, actions to recover wages based upon a breach of her employment contract and, therefore, she was entitled to a jury trial based on the court's holding in *Seaman*. The defendants, on the other hand, maintain that the plaintiff was seeking termination benefits, not wages for work that she actually performed, and that an action seeking termination benefits under the Wage Payment Act is quite different than a common law action for wages. They argue that, similar to the Prevailing Wage Act, a claim under the Wage Payment Act is a statutory proceeding unknown at common law and, as a consequence, no right to a jury trial exists in the absence of a statute conferring the right. We agree with the defendants in this regard.

■ In order to establish a claim for common law breach of contract in Illinois, a plaintiff must allege and prove the following elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 27, 752 N.E.2d 33 (2001). According to the Wage Payment Act, "employers" must pay "final compensation" due to a separated employee pursuant to an "employment contract or agreement" between the two parties. 820 ILCS 115/2, 5 (West 1998). Thus, an action under the Wage Payment Act requires proof, *inter alia*, that: (1) the defendant was an "employer" as defined in the Wage Payment Act; (2) the parties entered into an "employment contract or agreement"; and (3) the plaintiff was due "final compensation."

Although a plaintiff must prove the existence of a valid and enforceable contract in order to recover under a common law action for breach of contract, the same cannot be said in an action under the Wage Payment Act. Recently, the court in *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 827 N.E.2d 1051 (2005), held that a plaintiff need not have a valid, enforceable contract in order to recover under the Wage Payment Act. The court explained that, in order to state a claim under the act, the existence of either an employment contract or agreement is required. According to the court, the language of the statute on this point is crucial because " '[a]n "agreement" is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an "agreement" without the formalities and accompanying legal protections of a contract.' " *Landers-Scelfo*, 356 Ill. App. 3d at 1067-68, quoting *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243, 249, 807 N.E.2d 666 (2004). Because the existence of a formally negotiated contract is not necessary under the Wage Payment Act, the court concluded that a plaintiff "seeking to recover under it does not need to plead all contract elements if she can plead facts showing mutual assent to terms that support the recovery." *Landers-Scelfo*, 356 Ill. App. 3d at 1068; *Zabinsky*, 347 Ill. App. 3d at 249 (Wage Payment Act "provides an employee with remedies more expansive than a common law breach of contract action when it uses the words 'employment contract or agreement' " (emphasis omitted)).

Moreover, the term "employer" is given a more expansive meaning in the Wage Payment Act than in an action for common law breach of contract. First, in contrast to a common law action for breach of contract, any officer of a corporation or agent of an employer who knowingly permits the employer to violate the provisions of the Wage

Payment Act is deemed to be the "employer" and can be held individually liable to the plaintiff. 820 ILCS 115/13 (West 1998). Second, an "employer" under the Wage Payment Act may include employment agencies that make payments for work done for others. The court in *Landers-Scelfo* noted that, under common law, the most important factor in deciding whether a defendant is an employer is whether it has the right to control the manner and method in which the work is to be carried out; however, labor placement and employment agencies do not ordinarily "direct" the work of their placed employees. As such, the court concluded that the definition of the term "employer" under the statute is "inconsistent with the common-law definition and shows an intent to reach those who do not control the manner in which the work is done." *Landers-Scelfo*, 356 Ill. App. 3d at 1070.

In addition to the expansive meaning given to the term "employer" under the Wage Payment Act, a separated employee is entitled to recover much more than contractual wages. Under the Act, an employee is entitled to "final compensation," which includes not only wages, but also encompasses earned commissions, earned bonuses, the monetary equivalent of earned vacation and earned holidays, and "any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2 (West 1998). Because a separated employee is entitled to more than just contractual wages, we believe that the legislature created new rights for employees upon the termination of their employment.

■ Based on the foregoing analysis, we conclude that the Wage Payment Act created a cause of action distinct from a common law action for breach of contract. We, therefore, hold that the Illinois Constitution does not confer the right to a jury trial for actions filed pursuant to the Wage Payment Act (see *Martin*, 163 Ill. 2d at 75-76; *Seaman*, 325 Ill. App. 3d at 563) and, in the absence of a statute conferring the right to a jury trial, no such right exists. Accordingly, we reverse the judgment of the circuit court on counts II and III and remand the matter for a bench trial on those counts. See *Richard/Allen/Winter, Ltd.*, 156 Ill. App. 3d at 725; *Rubin v. Marshall Field & Co.*, 232 Ill. App. 3d 522, 597 N.E.2d 688 (1992). Further, because the attorney fees and costs awarded to the plaintiff were based on a favorable judgment on counts II and III, the award of attorney fees and costs is hereby vacated.

Although we need not decide the remaining issues raised by the defendants in light of our remand for a new trial on counts II and III, we will address two arguments that are likely to arise again on remand. The defendants contend that, even if the plaintiff had

prevailed on counts II and III, the trial court erred in awarding her attorney fees pursuant to the Attorneys Fees in Wage Actions Act (Attorney Fees Act) (705 ILCS 225/0.01 *et seq.* (West 1998)) because she failed to comply with the demand requirement contained in Act. We agree.

■ Section 1 of the Attorney Fees Act provides, in relevant part, as follows:

> "Whenever a[n] *** employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, *and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing,* then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action." (Emphasis added.) 705 ILCS 225/1 (West 1998).

■ In this case, the plaintiff attached three documents in support of her petition for attorney fees. The first document was a November 23, 1997, letter she wrote to Tisza in which she stated that she was entitled to "six (6) weeks severance pay, plus compensation for any unused vacation time and any/all other benefits per the contract." The second document was a December 30, 1997, letter from her attorney to Tisza, informing him that the plaintiff was seeking the following benefits: "1) eight weeks severance pay; 2) pay for four weeks of accrued unused vacation; 3) all benefits paid for six months from [the] date of termination of employment; and 4) pay for the sixty day notice of termination period which was not provided." The plaintiff also attached a January 2, 1998, letter from her attorney to James Irvine, vice-president of Communications Workers of America, requesting the same benefits contained in the December 30, 1997, letter to Tisza.

The defendants maintain that the purported demand letters attached in support of the plaintiff's claim for attorney fees were deficient in that they failed to specify a "sum" due. The plaintiff, on the other hand, argues that the Attorney Fees Act does not require that a specific dollar amount be included in the demand. She asserts that, had the legislature intended such a requirement, it would have specifically stated so.

The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421, 781 N.E.2d 249 (2002). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Land*, 202

Ill. 2d at 421. Words and phrases should not be construed in isolation, but interpreted in light of other relevant portions of the statute, so that no term is rendered superfluous or meaningless. *Land,* 202 Ill. 2d at 422. Moreover, because there is no common law right allowing successful litigants to recover attorney fees as either costs or damages, the Attorney Fees Act must be considered in derogation of common law and is to be strictly construed. *Caruso v. Board of Trustees of the Public School Teachers' Pension & Retirement Fund of Chicago,* 129 Ill. App. 3d 1083, 1087, 473 N.E.2d 417 (1984). Accordingly, the statute must be "complied with in every particular to entitle the plaintiff to recover attorney fees." *Caruso,* 129 Ill. App. 3d at 1087.

Section 1 of the Attorney Fees Act specifically states that a demand must be made in writing for a "sum" not exceeding the amount found due and owing. The general definition of the word "sum" is "[t]he total obtained as a result of adding" or "[t]he whole amount, quantity, or number." Webster's II New Riverside University Dictionary 1160 (1984); see *In re Detention of Bailey,* 317 Ill. App. 3d 1072, 1085, 740 N.E.2d 1146 (2000) (dictionary definitions may be used to find meaning of words for purposes of statutory construction). Applying these plain definitions, we believe that, by using the word "sum," the legislature intended that a plaintiff make a written demand of the specific amount due to her. See also *Swanson v. Village of Lake in the Hills,* 233 Ill. App. 3d 58, 68, 598 N.E.2d 430 (1992) (stating that, inherent in the Act's requirement for a written demand is that it contain a "certain sum"). Our interpretation of the term "sum" in this regard comports with the remaining requirements in section 1. A plaintiff can only recover attorney fees under the statute if the amount recovered at trial is equal to or greater than the amount contained in the pretrial demand letter. *Caruso,* 129 Ill. App. 3d at 1088. If the amount recovered at trial is less than the amount demanded in the pretrial letter, a plaintiff is not entitled to an award of attorney fees. *Caruso,* 129 Ill. App. 3d at 1088. In order to make this determination, however, the court must first be able to ascertain the amount demanded. Based on the plain meaning of the term "sum" and applying that definition to the remainder of the statute, we conclude that a plaintiff is required to specify an amount due in her written demand in order to comply with section 1 of the Attorney Fees Act.

We next determine whether the plaintiff sufficiently complied with the statute's written demand requirement. The plaintiff's November 23, 1996, letter addressed to Tisza does not specify an amount due; rather, the letter states in general terms that she is seeking six weeks of severance pay, plus compensation for any unused vacation time and "any/all other benefits per the contract." Although the plaintiff argues

that the letter contained a specific and easily calculable amount due, we do not find that it states a demand for a specific sum from Tisza. See *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 197-98, 795 N.E.2d 817 (2003) (court held that letter requesting that the " '[plaintiff's] compensation be immediately returned to its former level' " and that " 'any and all accrued outstanding compensation owing now be paid by [employer], as well' " was not a demand for a specific sum from the employer); *Caruso*, 129 Ill. App. 3d at 1088 (letter failing to specify an amount due and owing was insufficient demand). We find that the remaining two letters suffer from the same infirmities, as they fail to specify an amount due and owing.

After a careful examination of the letters attached in support of the plaintiff's petition for attorney fees, we conclude that she failed to supply adequate evidence of a written demand to the defendants which specified a sum that she claimed was due and owing. Accordingly, we find that the trial court erred in awarding attorney fees pursuant to section 1 of the Attorney Fees Act.

■ The second issue that is likely to arise again on remand is the defendants' contention that entering judgment on both counts II and III was inappropriate. They assert that, by entering judgment in the amount of $81,000 on counts II and III, the court essentially allowed the plaintiff to recover "twice for the same wrong." The plaintiff, on the other hand, argues that the Wage Payment Act specifically provides for "duplicative verdicts," both as an incentive to refrain from violating the Act and to ensure payment of the judgment. For the reasons that follow, we disagree with the plaintiff's interpretation of the Wage Payment Act in this regard.

It is clear that, given the expansive meaning of who is deemed to be an "employer" under the Act, a plaintiff may plead and prove a cause of action under the Wage Payment Act against both her employer and its agent who knowingly permitted the employer to violate the Act. See 820 ILCS 115/2, 13 (West 1998). Our supreme court in *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 486, 693 N.E.2d 358 (1998), however, held that, although a plaintiff may plead and prove multiple causes of action, she may obtain only one recovery for an injury. See also *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 197, 795 N.E.2d 817 (2003) (court held that the plaintiff could not recover lost wages from both his corporate employer on a breach of contract claim and from the president of the corporation on an intentional interference with contract claim because he was allowed to obtain only one recovery for an injury). In this case, the plaintiff sought the identical relief in counts II and III against Local 4250 and Tisza, respectively, for the same injury; namely, the nonpayment of termination benefits

she claims were due to her. Although the jury returned verdicts against the defendants on each count in the amount of $81,000, their liability in this respect is joint and several, as the defendants represent a single, unified employer. Additionally, to the extent that the plaintiff now asserts on appeal that she can recover the judgment from both defendants, we find this argument to be rather disingenuous given her counsel's statements at the hearing on the defendants' posttrial motions, which is set forth below:

"MR. KULWIN [the plaintiff's attorney]: The statute clearly provides, Judge, that you can get a verdict against the employer and the individual who was responsible. Whether or not plaintiff can ultimately recover the amount, the $81,000, twice, is an entirely separate issue.

In this case, Judge, the law provides that we're entitled to a verdict against both of them until [the plaintiff] is paid the amounts that she is owed. So that request should be denied.

THE COURT: You agree its' [*sic*] only [$]81,000, don't you?

MR. KULWIN: No dispute, Judge. But there are reasons to keep both counts active.

But I don't dispute that she's entitled—that she's not looking for $162,000. No, we don't dispute that, Judge."

Accordingly, although the plaintiff was entitled to plead causes of action under the Wage Payment Act in two separate counts, only one judgment should have been entered against the defendants, as they represent a single, unified employer.

As a final matter, the defendants argue that the circuit court erred in denying them leave to file a bill of costs with respect to the counts upon which they prevailed. We are unable to address the defendants' arguments in this regard, however, as they have neglected to include their motion for leave to file a bill of costs, or a transcript of the proceedings or bystander's report of the hearing on their motion. As the appellants, the defendants had the burden of presenting a sufficiently complete record to support their claim of error, and any doubts arising from the incompleteness of the record will be resolved against them. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984); *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 825 N.E.2d 1246 (2005). As the necessary motions and transcripts with respect to the issue of costs are not before us, we must presume that the trial court's decision in this regard was entered in conformity with the law. *Foutch*, 99 Ill. 2d at 392.

In summary, we: affirm the trial court's order denying the defendants' leave to file a bill of costs; reverse the judgment of the

circuit court on counts II and III; vacate the award of attorney fees and costs to the plaintiff; and remand the matter for a bench trial on counts II and III.

Affirmed in part; reversed in part; vacated in part; and cause remanded.

KARNEZIS, P.J., and ERICKSON, J., concur.